WO                  NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel R. Servin,<br><br>                Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                Defendant. | No. CV-16-00828-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Manuel R. Servin's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 13, "Def.'s Br."), and Plaintiff's Reply[1] (Doc. 14, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now affirms the Administrative Law Judge's decision (R. at 20-32) as upheld by the Appeals Council (R. at 1-4).

**I.**     **BACKGROUND**

Plaintiff filed his Applications on February 10, 2012, for a period of disability beginning May 1, 2011. (R. at 174-80.) Plaintiff's claim was denied initially on

---

[1] Neither Plaintiff's Opening Brief (Doc. 9) nor Reply (Doc. 14) were signed by counsel, except to certify service of those briefs.

September 24, 2012 (R. at 130-33), and on reconsideration on March 14, 2013 (R. at 125-27). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on July 8, 2014. (R. at 38-61.) On September 23, 2014, the ALJ denied Plaintiff's Applications.[2,3] (R. at 20-32.) On February 3, 2016, the Appeals Council upheld the ALJ's decision. (R. at 1-4.) The present appeal followed.

The Court has reviewed the voluminous medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has severe impairments that include diabetes mellitus (not controlled but no intervention), chronic obstructive pulmonary disease (COPD), personality disorder, sleep-related breathing disorders, obesity, and alcohol and substance addiction disorders. (R. at 23.)

**II. LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a

---

[2] The ALJ noted that Plaintiff previously applied for disability benefits in 2009, and another ALJ denied Plaintiff's previous application on April 29, 2011. (R. at 20.) The ALJ in the present case found that any claim for disability benefits prior to April 29, 2011, is barred by the doctrine of *res judicata*, which Plaintiff does not challenge here. (R. at 20.) The ALJ also found that the fact that Plaintiff filed a second application and claimed a disability onset date two days after the denial of his first application "lessens [Plaintiff's] credibility and suggests secondary gain as [Plaintiff's] primary goal." (R. at 20.)

[3] Plaintiff submitted 465 pages of additional medical records after the ALJ held the hearing, and the ALJ considered them prior to reaching her decision. (R. at 20.)

"specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises four arguments for the Court's consideration: (1) in step four of the disability evaluation process, the ALJ erred in concluding Plaintiff's RFC enabled him to perform his past work as a clean-up worker; (2) in formulating an RFC, the ALJ erred by

not adequately capturing Plaintiff's social limitations as identified by medical experts; (3) the ALJ erred in finding Plaintiff's testimony less than fully credible; and (4) the ALJ erred in discounting third-party evidence. (Pl.'s Br. at 18-23.)

### A. Plaintiff's Residual Functional Capacity to Perform Past Work

At step four of the disability evaluation process, an ALJ must determine if the plaintiff has the RFC to perform past relevant work, either as the plaintiff performed it or as it is generally performed in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Plaintiff argues that the ALJ erred by finding that Plaintiff had the RFC to perform his past work as a clean-up worker, because the Dictionary of Occupational Titles (DOT) classifies a clean-up worker as a "level two" job, requiring the ability to carry out "detailed but uninvolved written or oral instructions," and the ALJ assigned Plaintiff an RFC limiting him to "1 or 2 step instructions," which, Plaintiff argues, means he has difficulty with detailed instructions. (Pl.'s Br. at 13-14.)

The Court agrees with Defendant (Def.'s Br. at 6-8) that the ALJ's determination must be made with respect to Plaintiff's past relevant work either as it is generally performed or as Plaintiff actually performed it. Here, Plaintiff has not demonstrated that his past work as a clean-up worker, as he actually performed it, involved more than "one to two step instructions" or "simple work like procedures"—the limitations the ALJ included in Plaintiff's RFC. (*See* R. at 84-85.) Indeed, Plaintiff stated his past work entailed cleaning, sweeping, picking up trash, going for material, and helping with scaffolding, and the job required no technical knowledge, skills, or use of tools, equipment or machinery. (R. at 208-10.) In his response to the ALJ's hypothetical, the Vocational Expert (VE) described Plaintiff's past work as "simple repetitive, [and] routine" in concluding that he retained the RFC to perform it. (R. at 85.) The ALJ did not err in determining that Plaintiff has the RFC to perform his past relevant work under the regulations.[4]

---

[4] The Court declines to address Defendant's alternative argument (Def.'s Br. at 7) that Plaintiff waived its objection to the ALJ's conclusion at step four of the disability evaluation process by not raising what Plaintiff believed to be a contradiction between

- 4 -

### B.   Plaintiff's Social Limitations

Plaintiff next argues that the ALJ erred in accounting for the assessments of state agency psychologists Dr. Cheryl Woodson-Johnson (R. at 1439-56) and Dr. Burnard Pearce (R. at 1684), to which the ALJ gave great weight, in formulating Plaintiff's RFC. (Pl.'s Br. at 14-19; Def.'s Br. at 8-12.) After reviewing Plaintiff's entire medical record, on September 19, 2012, Dr. Woodson-Johnson concluded that Plaintiff had severe impairments of adjustment reaction with depressed mood and polysubstance abuse disorder. (R. at 1456.) She noted records indicating Plaintiff's opioid addiction, which was being treated with methadone maintenance, and severe nicotine dependence. (R. at 1456.) She also noted that there was no evidence of episodes of decompensation of extended duration or mental health hospitalization. (R. at 1456.)

Dr. Woodson-Johnson completed an RFC assessment and opined that Plaintiff has mild to moderate limitations in concentration, persistence, or pace and "would have some difficulty in carrying out detailed instructions and sustaining concentration for extended periods." (R. at 1456.) She also opined that Plaintiff "has the [RFC] for a full range of work at all exertional levels but with the following nonexertional limitations." (R. at 1456.) Plaintiff is able "to remember simple instructions; he can make simple decisions and follow simple work procedures; he has an adequate ability to interact [appropriately] with co-workers, supervisors and members of the public; and he can adapt to a work environment that is routine and predictable." (R. at 1456.) Dr. Woodson-Johnson also concluded that Plaintiff has moderate limitations in the ability to accept instructions, and the supervision required of Plaintiff's work is "simple, direct and concrete (unskilled)." (R. at 1454.) On March 6, 2013, Dr. Pearce affirmed Dr. Woodson-Johnson's opinion as written. (R. at 1684.)

Plaintiff contends that the RFC formulated by the ALJ did not adequately account for the need for supervision of Plaintiff's work.[5] (Pl.'s Br. at 15-16.) "[T]he ALJ is

---

the VE and the DOT in describing the job of clean-up worker.

[5] The Court finds that the RFC did account for Plaintiff's limitations in

- 5 -

responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Here, the ALJ characterized Plaintiff's non-exertional limitations as "able to remember 1 or 2 step instructions" and "make simple decisions and follow simple work procedures," with "an adequate ability to interact appropriately with co-workers, supervisors and members of the public." (R. at 24-25.) The ALJ's conclusion, as embodied in the RFC, that Plaintiff can follow simple work procedures, when read with the RFC limitation that Plaintiff be given only 1 or 2 step instructions, adequately captures Dr. Woodson-Johnson's assessment that Plaintiff has moderate limitations in the ability to accept instructions and that the supervision required of Plaintiff's work be simple, direct and concrete. The Court thus finds no error on the part of the ALJ. *See Rounds*, 807 F.3d at 1005-1006; *Stubbs-Danielson*, 539 F.3d at 1174.

Relatedly, Plaintiff argues that the ALJ improperly gave little consideration to certain opinions of treating psychiatrist Dr. Vimal Abhyanker and consultative mental examiner Dr. Brent B. Geary in formulating Plaintiff's RFC. (Pl.'s Br. at 14-18; Def.'s Br. at 17-19.) In particular, Plaintiff contends that the ALJ should have considered Dr. Abhyanker's observations that Plaintiff felt depressed, anxious, paranoid, and hopeless and that he has a low Intelligence Quotient (IQ) (*e.g.*, R. at 879), and Dr. Geary's impressions upon examining Plaintiff that he has a low IQ and requires some supervision in the activities of daily living (R. at 1432-38).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."

---

maintaining concentration, persistence, or pace, because Dr. Woodson-Johnson concluded that Plaintiff's limitation was only mild to moderate in this area.

- 6 -

*Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). As stated above, as a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

In this instance, the ALJ found that the portions of Dr. Abhyanker's assessment stating that Plaintiff was incapable of performing simple, routine, task-like work[6] and Dr. Geary's assessment that Plaintiff would require extra supervision to keep him on task were contradicted by other medical evidence in the record and Plaintiff's own statements. (R. at 29.) The Court must therefore examine whether the ALJ provided specific and legitimate reasons for discounting these portions of the assessments, supported by substantial evidence when examining the record as a whole. *See Carmickle*, 533 F.3d at 1164.

As the ALJ noted (R. at 29, 31), Plaintiff's reports that, among other things, he cooks his own meals, drives, uses public transportation, shops, cares for a dog, and attends the methadone clinic (R. at 245-52) are at odds with a conclusion that Plaintiff is incapable of performing simple work or that he requires extraordinary supervision. The ALJ may properly rely on evidence of a plaintiff's activities to discount a doctor's opinion about the plaintiff's ability to perform simple work. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-603 (9th Cir. 1999). The ALJ also considered Dr. Geary's observation that Plaintiff is manipulative, which may account for some of the inconsistencies in Plaintiff's various statements. (R. at 29.) And the ALJ noted that the medical record shows that Plaintiff's mental condition has consistently—not intermittently—improved with medication. (R. at 29.) The Court finds the ALJ gave the requisite specific and legitimate reasons supported by the record for discounting certain

---

[6] Dr. Abhyanker also noted that Plaintiff complained of foot pain, but Plaintiff had already reported that his foot pain was gone, and a finding of disabling foot pain would otherwise be unsupported by the medical record. (*See* R. at 28-29, 2162.)

- 7 -

conclusions of Dr. Abhyanker and Dr. Geary regarding the level of supervision Plaintiff requires to perform simple work. *See Carmickle*, 533 F.3d at 1164.

### C. The ALJ's Assessment of Plaintiff's Testimony

Plaintiff next argues that the ALJ erred in finding Plaintiff's testimony not fully credible. (Pl.'s Br. at 20-23.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Specifically, Plaintiff states that the ALJ failed to account for Plaintiff's testimony that he "needs reminders to bathe, take medications, and keep appointments." (R. at 22.) To begin with, the Court finds the ALJ did capture such a condition in the RFC by limiting Plaintiff to jobs that require him to "remember 1 or 2 step instructions" and "make simple decisions and follow simple work procedures," as Plaintiff's limitations were characterized by Dr. Woodson-Johnson. (R. at 24-25.) Moreover, as discussed above, the ALJ noted that Plaintiff has elsewhere reported that he engages in multiple activities without significant supervision. (R. at 29, 31, 245-52.) With regard to other parts of Plaintiff's hearing testimony, such as Plaintiff's reports of shortness of breath on account of COPD, the ALJ noted that, despite his COPD, Plaintiff continues to smoke cigarettes. (R. at 27, 31.) The Court finds that the ALJ provided the requisite specific, clear and convincing reasons in the areas she discounted Plaintiff's testimony regarding the severity of his conditions and otherwise accounted for Plaintiff's reported symptoms in the RFC she formulated.

### D. Third-Party Evidence

Lastly, Plaintiff contends that the ALJ did not give sufficient weight to the testimony of Plaintiff's mother and brother. (Pl.'s Br. at 23-24.) Specifically, Plaintiff's relatives stated that, among other things, he has difficulty breathing, has memory problems, and needs reminders to shower and take medications. (R. at 234-41, 274-78.)

On the other hand, Plaintiff's mother also testified that Plaintiff can prepare simple meals, perform light household chores, drive a car, go out alone, shop, and socialize. (R. at 234-41.) This testimony is not materially different from that addressed above, and the ALJ gave specific and legitimate reasons for discounting portions of it, while considering other portions. (R. at 26.) Moreover, to the extent the statements conflict with the reliable findings of medical experts such as Dr. Woodson-Johnson, the ALJ was justified in giving more weight to the latter. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The Court finds no error in the ALJ's consideration of the statements of Plaintiff's relatives in formulating Plaintiff's RFC.

Plaintiff raises no materially harmful error on the part of the ALJ, and the Court must therefore affirm the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits and Supplemental Security Income under the Act.

**IT IS THEREFORE ORDERED** affirming the September 23, 2014 decision of the Administrative Law Judge, (R. at 20-32), as upheld by the Appeals Council on February 3, 2016 (R. at 1-4).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this matter.

Dated this 31st day of March, 2017.

Honorable John J. Tuchi
United States District Judge